

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE CONLON
MAGISTRATE JUDGE COLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 11 CR 119 |
| v. ) | |
| ) | Violations: Title 18, United States |
| JASWINDER RAI CHHIBBER ) | Code, Sections 1035 and 1347 |
| ) | |

**FILED**

MAR 1 7 2011

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

<u>COUNT ONE</u>

The SPECIAL JULY 2010 GRAND JURY charges:

1. At times material to this indictment:

**The Defendant**

a. Defendant JASWINDER RAI CHHIBBER, was a physician licensed to practice medicine in Illinois. Defendant CHHIBBER operated a clinic called Cottage Grove Community Medical Clinic, located at 642 East 79th Street, Chicago, Illinois 60619 (the "clinic").

**Medicare**

b. Medicare was a national health insurance program pursuant to Title 18 of the Social Security Act. The Centers for Medicare and Medicaid Services ("CMS") was a federal agency within the United States Department of Health and Human Services ("HHS"), which administered the Medicare program through its contractors. Medicare provided free or below-cost health care benefits to certain eligible beneficiaries, primarily persons who were sixty-five years of age and older.

c. Medicare helped pay for certain medically necessary physician services, outpatient services, and other medical services and also for medically necessary inpatient hospital care, including medically necessary testing.

d. CMS contracted with Wisconsin Physicians Service ("WPS"), a Medicare contractor, to process certain Medicare claims submitted for physician's services for beneficiaries in Illinois.

e. Medicare ordinarily authorized payment for physician and hospital services only if those services were actually provided and were "medically necessary." That is, the services were required because of disease, disability, infirmity, or impairment. Medicare would not pay for services and treatment that were not actually provided or if the patient did not meet criteria which indicated that the patient needed the relevant services and treatment.

f. Defendant CHHIBBER was a "provider" under the Medicare program. That is, he was approved by WPS and HHS to administer services to Medicare clients and to receive compensation for the services, provided they met requirements for reimbursement and were rendered.

### Blue Cross Blue Shield

g. Blue Cross Blue Shield of Illinois ("Blue Cross"), located in Chicago, Illinois, was a Division of Health Care Service Corporation. Blue Cross was a health insurance carrier that provided health insurance plans to groups of individuals through their employer-sponsored health insurance plans. Like Medicare, Blue Cross would only reimburse providers for medically necessary services. Blue Cross was a health care benefit program as defined in 18 U.S.C. § 24(b). Defendant CHHIBBER was an enrolled provider of services to Blue Cross and was eligible for reimbursement for covered services that were provided.

**Billing and Diagnosis Codes**

h.      Health care providers reported professional services using numerical codes called CPT codes. Health care providers reported diagnoses using numerical codes called ICD-9-CM codes.

i.      To have received reimbursement for a covered service from Medicare or Blue Cross, a provider had to submit a claim form containing the required information appropriately identifying the dates of service, provider, patient, diagnosis, services rendered, and number of units rendered.

2.      Beginning no later than in or about January 2007, and continuing through in or about May 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JASWINDER RAI CHHIBBER,

defendant herein, knowingly and willfully devised, intended to devise, and participated in a scheme to defraud health care benefit programs that affected interstate commerce, including Medicare and Blue Cross, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money or property owned by, and under the custody and control of such programs, in connection with the delivery or payment for health care benefits, items and services, which scheme is further described below.

**Defendant's Scheme to Defraud Health Care Benefit Programs**

3.      It was part of the scheme that defendant CHHIBBER ordered medically unnecessary tests on patients covered by health care benefit programs, including Medicare and Blue Cross. Defendant CHHIBBER wrote false and fictitious diagnosis codes in patients' medical charts and submitted claims to health care benefit programs for medically unnecessary tests with false and

3

fictitious diagnosis codes to justify the tests he had ordered. At times, defendant CHHIBBER would order tests without first having seen the patients or even knowing for what conditions the patients were seeking treatment. Further, CHHIBBER sought reimbursement for tests even when he failed to review the test results.

4. It was further part of the scheme that at times defendant CHHIBBER instructed his clinic staff to perform various tests on patients waiting to be seen without first knowing the reasons for the patients' visits to the clinic or having diagnosed the patients' current medical conditions.

5. It was further part of the scheme that defendant CHHIBBER ordered tests on patients he had examined but whose signs and symptoms did not indicate that the tests were medically necessary.

6. It was further part of the scheme that defendant CHHIBBER documented in patients' medical charts false and fictitious signs and symptoms in order to provide written support for the tests defendant CHHIBBER ordered. Defendant CHHIBBER also included in patients' charts various false and fictitious diagnoses that likewise were fabricated by defendant CHHIBBER and not based on the patients' actual signs and symptoms, also to provide written support for the tests defendant CHHIBBER ordered.

7. It was further part of the scheme that at times defendant CHHIBBER ordered tests and submitted claims to health care benefit programs for the tests but did not review the test results.

8. It was further part of the scheme that defendant CHHIBBER and others working at his request added documentation to patients' charts weeks or months after tests had been performed to make it appear as though defendant CHHIBBER had personally reviewed and interpreted the test results even though he had not.

9. It was further part of the scheme that defendant CHHIBBER submitted and caused to be submitted to health care benefit programs claims for services that defendant CHHIBBER knew were not properly payable because (1) the tests for which defendant CHHIBBER sought reimbursement were not medically necessary, (2) defendant CHHIBBER included false diagnoses in the claim, and (3) defendant CHHIBBER falsified the medical records supporting the claim by including false and fictitious diagnoses and other information.

### Testing, Diagnoses, and Claims for Individuals A, B, and C

10. It was further part of the scheme that on or about January 26, 2010, defendant CHHIBBER ordered tests on Individual A that were not medically necessary and documented a false and fictitious diagnosis in Individual A's medical chart. Individual A, an undercover law enforcement officer, went to defendant CHHIBBER's clinic posing as a new patient. Before defendant CHHIBBER saw or examined Individual A, Individual A was taken to an examination room where he was given an electrocardiogram and a pulmonary function test. Defendant CHHIBBER later examined Individual A, during which examination Individual A told defendant CHHIBBER that Individual A was there because he had been experiencing "itching." After the examination, Individual A received an echocardiogram. Defendant CHHIBBER's progress note for Individual A's January 26, 2010 office visit reflected diagnoses including shortness of breath, which Individual A had not reported to defendant CHHIBBER and Individual A did not have.

11. It was further part of the scheme that on or about February 9, 2010, defendant CHHIBBER submitted a claim to Blue Cross for services allegedly provided to Individual A on January 26, 2010, including an electrocardiogram and a bronchodilation responsiveness test. One of the diagnoses on the claim falsely indicated that Individual A had shortness of breath.

5

12. It was further part of the scheme that on or about February 23, 2010, defendant CHHIBBER documented a false and fictitious diagnosis in Individual B's medical chart. Individual B, an undercover law enforcement officer, went to defendant CHHIBBER's clinic posing as a new patient. Defendant CHHIBBER examined Individual B, during which examination Individual B told defendant CHHIBBER that Individual B was there because he wanted a general medical checkup. After the examination, Individual B received an electrocardiogram. Defendant CHHIBBER's progress note for Individual B's February 23, 2010 office visit included an order for an EKG. The note further reflected a diagnosis of a heart murmur, which Individual B did not have.

13. It was further part of the scheme that on or about March 31, 2010, defendant CHHIBBER submitted a claim to Blue Cross for services allegedly provided to Individual B on February 23, 2010, including an electrocardiogram. The diagnosis on the claim falsely indicated that Individual B had a heart murmur.

14. It was further part of the scheme that on or about February 16, 2010, defendant CHHIBBER ordered tests on Individual C that were medically unnecessary. Individual C, an undercover law enforcement officer, went to defendant CHHIBBER's clinic posing as a new patient. Defendant CHHIBBER examined Individual C, during which examination Individual C told defendant CHHIBBER that Individual C was there because he wanted a new employment physical examination. At no point during the examination did Individual C inform defendant CHHIBBER that he had experienced fainting, also called syncope. After the examination, Individual C received an electrocardiogram, an echocardiogram, and an ultrasound of Individual C's carotid area.

15. It was further part of the scheme that on or about February 22, 2010, defendant CHHIBBER submitted a claim to Blue Cross for services allegedly provided to Individual C on

February 16, 2010, including an echocardiogram and a duplex scan of extracranial arteries. The diagnosis codes on the claim falsely indicated that Individual C had undiagnosed cardiac murmurs, other symptoms involving the cardiovascular system, and syncope and collapse.

16. It was further part of the scheme that defendant CHHIBBER misrepresented, concealed, hid and caused to be misrepresented, concealed and hidden acts done in furtherance of the scheme and the purposes of those acts.

17. On or about on or about February 9, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JASWINDER RAI CHHIBBER,

defendant herein, knowingly and willfully executed and attempted to execute the above-described scheme by submitting a claim to Blue Cross for services, including an electrocardiogram (code 93000) and a bronchodilation responsiveness test (code 94060), performed on Individual A, which claim falsely indicated that Individual A suffered from shortness of breath (code 78605);

In violation of Title 18, United States Code, Section 1347.

## COUNT TWO

The SPECIAL JULY 2010 GRAND JURY further charges:

1. Paragraphs 1 through 16 of Count One are realleged and incorporated as though fully set forth here.

2. On or about March 31, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JASWINDER RAI CHHIBBER,

defendant herein, knowingly and willfully executed and attempted to execute the above-described scheme by submitting a claim to Blue Cross for services, including an electrocardiogram (code 93000), performed on Individual B, which claim falsely indicated that Individual B suffered from heart murmurs (code 7852);

In violation of Title 18, United States Code, Section 1347.

## COUNT THREE

The SPECIAL JULY 2010 GRAND JURY further charges:

1. Paragraphs 1 through 16 of Count One are realleged and incorporated as though fully set forth here.

2. On or about February 22, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### JASWINDER RAI CHHIBBER,

defendant herein, knowingly and willfully executed and attempted to execute the above-described scheme by submitting a claim to Blue Cross for services, including an echocardiography, transthoracic (code 93306) and a duplex scan of extracranial arteries (code 93880), performed on Individual C, which claim falsely indicated that Individual C suffered from undiagnosed cardiac murmurs (code 7852), other symptoms involving the cardiovascular system (code 7859), and syncope and collapse (code 7802);

In violation of Title 18, United States Code, Section 1347.

## COUNT FOUR

The SPECIAL JULY 2010 GRAND JURY further charges:

1. Paragraph 1 of Count One is realleged and incorporated as though fully set forth here.

2. On or about January 26, 2010, at Chicago, in the Northern District of Illinois, Eastern Division,

### JASWINDER RAI CHHIBBER,

defendant herein, in a matter involving a health care benefit program, knowingly and willfully made a materially false, fictitious and fraudulent statement in connection with the delivery of and payment for health care benefits, items and services, in that defendant wrote in the medical chart of Individual A the diagnosis of "SOB," meaning shortness of breath, when, in fact and as defendant well knew, Individual A did not have such diagnosis;

In violation of Title 18, United States Code, Section 1035(a)(2).

## COUNT FIVE

The SPECIAL JULY 2010 GRAND JURY further charges:

1. Paragraph 1 of Count One is realleged and incorporated as though fully set forth here.

2. On or about February 23, 2010, at Chicago, in the Northern District of Illinois, Eastern Division,

JASWINDER RAI CHHIBBER,

defendant herein, in a matter involving a health care benefit program, knowingly and willfully made a materially false, fictitious and fraudulent statement in connection with the delivery of and payment for health care benefits, items and services, in that defendant wrote in the medical chart of Individual B the diagnosis of "Heart Murmur," when, in fact and as defendant well knew, Individual B did not have such diagnosis;

In violation of Title 18, United States Code, Section 1035(a)(2).

## COUNT SIX

The SPECIAL JULY 2010 GRAND JURY further charges:

1. Paragraph 1 of Count One is realleged and incorporated as though fully set forth here.

2. On or about February 22, 2010, at Chicago, in the Northern District of Illinois, Eastern Division,

### JASWINDER RAI CHHIBBER,

defendant herein, in a matter involving a health care benefit program, knowingly and willfully made a materially false, fictitious and fraudulent statement in connection with the delivery of and payment for health care benefits, items and services, in that defendant caused diagnosis codes including 7852 (undiagnosed cardiac murmurs), 7859 (other symptoms involving cardiovascular system), and 7802 (syncope and collapse), to be entered on Blue Cross claim number 02010053502C0360X for Individual C, when, in fact and as defendant well knew, Individual C did not have such diagnoses;

In violation of Title 18, United States Code, Section 1035(a)(2).

## FORFEITURE ALLEGATION

The SPECIAL JULY 2010 GRAND JURY further charges:

1. The grand jury realleges and incorporates here by reference the allegations of Counts One through Three of this indictment concerning health care fraud in violation of Title 18, United States Code, Sections 1347, for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

2. As a result of the violations of Title 18, United States Code, Section 1347 as alleged in the foregoing indictment,

JASWINDER RAI CHHIBBER,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any and all right, title and interest he may have in any property, real and personal, that constitutes and is derived, directly and indirectly, from gross proceeds traceable to the commission of the offense, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

3. If any of the forfeitable property described above, as a result of any act or omission by the defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third party;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

                                          A TRUE BILL:

                                          _____

                                          FOREPERSON

_____
UNITED STATES ATTORNEY