**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 11 CR 00119 |
| | ) | |
| JASWINDER CHHIBBER, M.D., | ) | Judge Suzanne B. Conlon |
| | ) | |
| Defendant. | ) | Magistrate Judge Jeffrey Cole |

**MEMORANDUM OPINION AND ORDER**

The defendant, Dr. Jaswinder Rai Chhibber, has been charged with healthcare fraud under 18 U.S.C. § 1347 and 18 U.S.C. § 1035(a)(2). On June 1, Dr. Chhibber filed what was styled as a motion for discovery, which included a request for all material required to be disclosed by the government pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). [Dckt. # 28]. The Government represented that it would abide by the obligations imposed on it under *Brady* and *Giglio.* [Dckt. # 37].

On October 17, while jury selection was progressing, Judge Conlon informed counsel that the Government had made an *ex parte* submission to the Court that "apparently requested a ruling from the Court on whether the Government was required to disclose certain information to the defense." Renewed Motion for Discovery at 2, ¶5. [Dckt #157]. The Government has represented that that application had been made to Judge Conlon quite some time before she declined to rule on the Government's request. The Government refuses to tell defense counsel what information was

submitted to Judge Conlon. (*Renewed Motion,* at 2, ¶6).[1]

It is Dr. Chhibber's counsel's view that the Government's submission indicates that it is uncertain whether the submitted information falls within the scope of *Brady* or *Giglio.* From this, he reasons that the Government has not complied with its constitutional obligations and/or that the apparent uncertainty requires that the information be turned over to the defense. And so, he has renewed his motion to produce all information that it is required to produce under *Brady* and *Giglio*. The motion thus generically asks for all evidence that is favorable to the accused and material to guilt or punishment and all information that could be used to impeach Government witnesses especially where the witness's testimony is an important part of the Government's case. (*Renewed Motion*, at 2-3, ¶6-7).

The motion cites not a single case which suggests that the kind of broad-based, non-specific, undifferentiated request in a discovery motion for exculpatory information or for evidence that could by used to impeach government witnesses should be granted under *Brady* and *Giglio*. *Brady* and *Giglio* impose obligations on the Government. They do not create an additional overlay to the discovery provisions of the Federal Rules of Criminal Procedure or the Jencks Act. *See Weatherford v. Bursey,* 429 U.S. 545, 559-560 (1977)("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one"); *Jones v. Bryant,* 27 Fed.Appx. 699, 701, 2001 WL 1637665, 1 (7th Cir. 2001)("Our own opinions, which declare that *Brady* governs trials and not pretrial discovery, e.g., *United States v. Higgins,* 75 F.3d 332 (7th Cir.1996)."); *United States v.*

---

[1] At the hearing on the defendant's motion this morning, the Government represented that Circuit precedent permitted precisely this kind of application and called my attention to *United States v. Baker*, 453 F.3d 419 (7th Cir. 2006); *United States v. Souffrant*, 338 F.3d 809 (7th Cir. 2003); *United States v. Cruz-Velasco*, 224 F.3d 654 (7th Cir. 2000). Whether these cases authorize the Government's attempted submission is analytically insignificant to the outcome of the present motion.

2

*Abonce-Barrera,* 257 F.3d 959, 970 (9th Cir. 2001)("'*Brady* does not create any pretrial discovery privileges not contained in the Federal Rules of Criminal Procedure'"); *Jells v. Mitchell,* 538 F.3d 478, 520 (6th Cir. 2008); *United States v. Bell,* 321 Fed.Appx. 862, 864, 2009 WL 749866, 2 (11th Cir. 2009)("'*Brady* applies after trial only "when it is discovered that the prosecution had material information of which the defense was unaware.'").

The renewed motion cites only one additional case, *United States v. West,* 790 F.Supp.2d 673 (N.D.Ill. 2011), and it does so without analysis or elaboration. But that case does not support the generalized request for pretrial discovery made here. In *West*, the defendants simply asked the government to identify its agents (military personnel or contractors) who are in a position to provide evidence exculpatory to the defense. Defendants had sufficiently shown that this information is in the government's hands and that they are unable to obtain it on their own. The court held that identifying witnesses with exculpatory information was not an inappropriate request. Reliance was placed on *United States v. Steele,* 221 F.3d 1340, 2000 WL 796191, at *4 (7th Cir.2000)(unpublished).

The facts of *Steele* confine its holding: In its initial *Brady* disclosures, the government provided the information that "[a] witness stated that on June 25, 1998, at approximately 9:20 a.m., he observed the victim walking through the Springdale subdivision" and that "[a] witness stated that on June 25, 1998, at approximately 11:55 a.m., he observed the victim walking near the first street south of Center Road in the Springdale subdivision." Steele pointed out that, had he been able to contact the witnesses, these statements could have been used to impeach Wooldridge's testimony that she was sleeping on June 25 until Steele knocked on her door at 10:00 a.m., as well as to impeach her testimony that Steele abducted her almost immediately upon obtaining entry to her

3

home. But although the government did not initially name the two potentially impeaching witnesses in its *Brady* disclosures, the government later provided Jencks Act statements (several police reports) to Steele; the police reports named the two witnesses.

One police report contained information about an interview with Jeremy Trojano, who saw Wooldridge walking through his neighborhood at 9:20 a.m. on June 25, 1998. Trojano's phone number was redacted; his address was not on the report at all. Another police report named Larry Wynn as the witness who saw Wooldridge at 11:55 a.m. on June 25, 1998; his address was redacted. Another police report discussed an interview with Gina Pickett, an employee at Cub Foods who knew Steele from his visits to the store's pharmacy. Pickett stated that she "strongly" believed that she had a conversation with Steele at Cub Foods at 2:00 p.m. on June 25, 1998 (the day of the abduction) though she admitted the conversation could have occurred on June 23, 1998. Pickett's address and phone number were redacted from the police report, though Steele represented that Pickett had given him her phone number on a different occasion. But even with the assistance of a court-appointed investigator, Steele was unable to locate or talk to any of these witnesses and, consequently, none testified at trial.

Under these circumstances, the district court in *West* held that the government should have provided the information. The fact that defendants have asked the government to identify persons and not simply to provide potentially exculpatory information does not render their request improper or otherwise outside the bounds of *Brady* and its progeny. By way of example, the court said, what if, in a bank robbery case, the government were aware of an eyewitness who failed to identify the defendant as the robber when given the opportunity to do so? Surely no one would dispute that the identity of such a witness would be *Brady* material that the government must produce to the defense.

4

*See, e.g., Goudy v. Basinger,* 604 F.3d 394, 399 (7th Cir. 2010) (agreeing with state court's determination that statements of persons who identified someone other than defendant as perpetrator were *Brady* material).

But this is precisely the kind of information which the government represented today at the hearing on the renewed motion date has already provided to the defendant. Indeed, the government represented that it had provided a substantial amount of information under *Brady* and *Giglio* to the defendant, as well as having made available to him the records and documents it has obtained in connection with the charges in the case. Specifically, the government stated that certain witnesses have told it that they did tell the defendant that they had a particular ailment or condition. That is precisely the kind of evidence with which the district court in *West* was concerned. Finally, Judge Conlon has set a schedule for the production of Jencks materials, and that schedule governs. *United States v. Brazil,* 395 Fed.Appx. 205, 215, 2010 WL 3398898, 8 (6th Cir. 2010)("'[w]hen *Brady* material sought by a defendant is covered by the Jencks Act ... the terms of that Act govern the timing of the government's disclosure.'")

The renewed motion does not make a specific request like that involved in *West*, but rather, as noted above, makes an oceanic, nonspecific request for information that might be favorable to the accused and material to guilt or which might be used to impeach government witnesses. The mere fact that the defendant suspcts that the Government must have some measure of uncertainty about its *Brady* obligations in light of its application to Judge Conlon does not mean that the Government has not fulfilled its *Brady* and *Giglio* obligations, and that it presently has in its possession materials that should be turned over to the defense as a matter of due process. "A due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue

burden upon the district court." *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir. 1985).

Consequently, the Renewed Motion for Discovery [Dckt. #157] must be DENIED.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

DATE: 12/21/11